Good morning, Your Honors. May it please the Court, my name is Russell Handy. I represent the plaintiff and the appellant in this case, Mr. Timothy Daubert. My intention is to reserve five minutes for rebuttal time. Right. You have a clock right there and I'll try to help you with that. Thank you very much, Your Honor. In this case, we're asking the panel to overturn the decision of Magistrate Austin when he granted summary judgment motion to the defense and basically took away Mr. Daubert's opportunity to try this matter. We have two arguments with the magistrate's ruling. One is that he misunderstood the relevant law and demonstrates that in his order. And second of all, he overstepped his authority when he actually engaged in a subjective analysis of the facts and participated in a weighing of the evidence and made conclusions that are really smack of advocacy rather than just calling balls and strikes in a motion for summary judgment. May I ask you one thing, counsel? You seem to be arguing that the facility needed to be readily accessible. Are you disputing the fact that a facility that existed before January 26, 1992 is not covered by that portion of the act? The existing facility standard, which is different from a new construction standard, requires facilities only to be accessible if it's necessary to provide program accessibility. But that is not specifically necessarily related to the, in this case, the bleachers. If the program is provided, we're going to talk about that, of course, but you do agree, I gather, that the law exempts the school district from having to reconstruct a 1971, I recall, bleacher to conform to ADA standards. If, as if this were a new facility. Right. Different standard, but I would take issue with the word exempt, and that's one of the problems we had. It's not an exemption. What happens is the new, the existing facility standard, and this is the words of the Department of Justice, provides flexibility to a Title II entity, to a government entity, to determine how they're going to make their program accessible. But both the Department of Justice and the United States Supreme Court says in many instances that will necessitate, and that's their words, physical modification of the facilities. So they're not exempt. Then that goes to really, does it all kind of collapse into whether there's programmatic access? Yeah, ultimately the standard is, and that's what we call programmatic access. That's ultimately the standard. But as even the magistrate in this case noted, one of the factors that you look at to determine whether or not you have programmatic access is, is the facilities accessible. And that means look at the accessibility standards. That's just a starting point. It's guidance. Are the facilities accessible? And in fact, existing facilities were required when the ADA was passed to do a self-evaluation, right, and to make a list of all their facilities that were not accessible and all their programs that were not accessible, then to create a transition plan that identified which physical structures had to be renovated. So it clearly contemplated that some physical structures would have to be renovated as part of programmatic access. But then it gets back to kind of the question I think we have to answer is, would you detail for us in your view how programmatic access was denied? I will. And I think it really starts with the implementing language, the language of the implementing regulation. This is found at 28 CFR 35.149. And I think the language here is key because it forms the basis of a misunderstanding. Here's what it says. Except as otherwise provided in 35.150, no qualified individual with a disability shall, because a public entity's facilities, and it specifically talks about facilities here, are inaccessible or unusable by individuals with disabilities, be excluded from participating in or denied the benefits of the services, programs, or activities. So one of the issues here is, what are the benefits of this program of a football game? And so it's the language. When you look at the actual language, it's very clear that they're ‑‑ Okay. So now put that into football language. Yeah. Okay? Because that's what we're talking about. Right. Was your client denied basically the benefits of watching football? Yeah, the benefits of the football game. Of watching the football game. And so we contend that among the benefits that are offered at this football stadium are not only watching the game, you know, the X's and O's on the field, but the camaraderie and socialization that takes place when you're congregating with fans who share similar interests who are there. In fact, people go to games just to tailgate sometimes, and that's all a social experience. But we argue there's a ‑‑ They don't tailgate in the bleachers, do they? No, no, they don't. But my point is that, well, I mean, there's similar activities in the bleachers. I mean, you can tailgate in the parking lot. Right, right. My point is that there is a social qualitative component to going to a football game that is independent of just watching the actual action. I gather your position is that the school district in this case, in order to provide that for your client, must alter the facility. I think so. I think in this case the only way to meet programmatic access, when you look at what are the benefits that are being offered here, and with, as the intellectual recommendation says, with an eye, this is a public entity, shall, and the language is mandatory, pursue those remedies that allow them to be integrated to the maximum extent possible. This is 35.150. So when you're considering, do we have to modify facilities? In fact, this is such important language, I'm going to Before you read the language, I'd like to ask you, is there any case that you can cite as to where a facility that existed prior to 1992, that a school district or whatever the public entity was, was required to modify the structure in order to comply with the regulation that you're citing? Oh, it's like a pop quiz, Your Honor. It's actually one I would think you would expect. Yeah, and there's been literally thousands. In fact, one of the very first published ADA cases was against the Statue of Liberty in New York City. That was one of the very first ones. They had to modify elevators and so forth, an existing facility. In fact, in the state of California, we see curb cuts going in all over the state of California. These are existing, long existing streets, and they have to come up with a plan, and they're slowly implementing curb cuts all over the place. And there's been published decisions, including the Barton case that we cited in our paperwork. There's a huge class action against the prisons, the Armstrong class action against the prison system, for existing prison facilities that have to retrofit and modify in order to provide accessible prison facilities. These are all over the place. Another one is the Longburg case that we see cited in the paperwork against the city of Riverside, where, again, it had to do with streets and infrastructure. More apropos to this case, I recall that there are movie theater cases. There are movie theater cases, yeah. They had to do some modification. But in part, the modifications there were such that you really couldn't even go to the movies the way they were configured, depending on where the entrance was and the, I guess you'll call them, leechers in the movie. So it was a little bit different in that to be able to actually watch the movie in an accessible position, you needed to modify. Here, and this is probably what you know that we're trying to struggle with, your client and others can actually, and accommodations have been made for them to watch from these various field positions, right? Well, actually, there's no accommodations being made. There's not a single designated area, no sign, no marker, no striped-off area. They just say you can camp around the field, wherever you'd like to sit. In fact, that's part of the stipulated. They haven't done anything here. That's the problem. There's no plan here. So would it be different if they said we have a space for you on the 40-yard line and on the field because you can get there flat? Yeah, I don't think that that would solve the problem. So it doesn't matter that, I'm just trying to figure out what the issue is here, it doesn't matter that it's not marked off. I think the solution here is there has to be a ramp that's placed to allow you to sit on that first level of the stadium-style seating. So you're with the fans, you're part of the game that's going on. So that really is what you're narrowing in on, that there is a way for individuals to come and watch the ballgame, right? Oh, yeah, they can see the game, yeah. So what you're adding as part of the programmatic aspect is camaraderie. And they can bring a friend or whomever to sit with them, correct? Yeah, if they want to bring their own chair and give up the opportunity to sit with the other fans also and sit with the elevated superior line of sight, they can do that. So if we had to write a holding for you, what would that holding be? I think the holding would be that when a trier of fact is weighing the evidence or a judge is looking at it in the setting, they have to consider the non-isolation, non-segregation principles that are built into the ADA, they're part of the findings, we cited that in the very findings that Congress identified as a pervasive social ill that continues to this day. And the language says that a public entity like the school district, when they're figuring out how they're going to provide programmatic access, have to put a priority on non-segregation, non-isolation, and have to integrate people to the maximum extent appropriate. That has to be one of the factors that are considered. In this case... But is there any significance to the evidence that was part of the stipulated facts that some of the places from which an individual can watch the football game from the field level are also places where other people commonly congregate to watch the football game? I mean, aren't we talking about what is the quality of the access as opposed to whether there is access? I don't know if that is necessarily in the stipulated facts. Certainly Mr. Moreno, the two other individuals in wheelchairs sometimes will be accompanied by family members. My client is a widower, he goes there by himself, typically, and he wants to congregate with the fans, that's in his declaration. Well, they had those other facts about how one of the areas from which you can watch the game is over where the food service is and that lots of people stay there and watch the game while they're having whatever the food is that they have. There may be a possibility that people stand as they're holding their food near the concession side, but there's really one place where people sit and watch the game for three hours. I mean, you can watch the game as you're walking to and from the concession stand. But again, these are like this weighing of facts. And the stipulated facts do not say... In fact, one of the stipulated facts, stipulated fact number, item number 23 that the court identifies, it's on page 117 of the excerpt of the record, says Mr. Dober had inferior sitting positions, it was commonly blocked, he could not find a place to sit. That was an undisputed fact. And so I think to answer the question, if you're writing an opinion, A, I would say that we should allow the trier fact, like let there be a fully developed factual record, consider these factors. I think these factors have to be considered. We see it keep coming up. The Greer decision is one, other decisions are one, where people complain about the same thing. I'm being segregated from the rest of the group. It's not good enough I can just camp out somewhere. You know, you have something qualitative here, something social. There's a social event going on. I can't participate in that social event. Let me ask you a tooth question. First of all, I want to return to the cases because we didn't finish our discussion there. When you talk about the public changes like sidewalks and so on and so on, my recollection is that in each of these instances that there were there was some new construction that somebody wanted to do, the city, the county, whatever. Obviously, when there's new construction, you've got a whole new ballgame there. Can you think of any of these public cases where there is no new construction? So say, for example, you've got a whole area. There's never been any change in 50 years. And nobody's asking for permits, nothing. Are you saying that under that scenario that the city would be required to do a new cut in the sidewalk and so on? Absolutely. That is what the law says. It is necessary to provide programmatic access. Remember, there's a flexible standard. The city has a choice. 35150 says you can either, and it gives you a list of things, you can relocate the services to an accessible facility. A lot of courtrooms do that, older courtrooms. They'll just relocate their courtroom if they have someone who's in a wheelchair and they know that, and a request is made, they'll relocate to a lower floor. That's one thing that can be done. If there were no lower floors, they would be obligated to provide vertical access. And, in fact, the U.S. v. Tennessee Lane case that we talked about that specifically talks about, and the quote coming from that case is the one that says, in many cases, physical modification will be necessitated. And so it is a flexible standard. I want to save your remaining time. Oh, yes. I do want to, just so I can respond to anything that might come up. I'm sure my colleague gave you a little bit of extra time, but I wanted to follow through the second thing here. I know you're concerned about the summary judgment aspect and what the district court did, but as was pointed out by Judge Bolton, there were stipulated facts here. Obviously, summary judgments can be handled off of stipulated facts since those are not in dispute. Yeah. What facts do you believe are disputed that are material that were not in the stipulated facts in this case? Well, first of all, we stipulated to the statements by Mr. Moreno, two of those statements by the witnesses. There was never an opportunity to cross-examine them or look into it, so that would be part of the record. They say that they found an unobstructed line of view. We don't disagree with that because there are unobstructed lines of view, but they will be periodically blocked. So we have no idea how often it gets blocked for them. And then there's also testimony from Mr. Daubert about why he goes there, his experience, and how that segregation affects him, why it really does disenfranchise him from participating in the social event. And these are facts that are just not developed on the record. And also – Is that the court's fault? It's not the court's fault. However, if the court were going to apply this – we talk about the Starsky standard. The court said in its own record, I'm applying the traditional summary judgment motion standard. I am not going to weigh the evidence. I am not going to make credibility determinations. And so the court said that itself. And this was not a complete record. We were required to come up with undisputed facts. Local rules and the judge's requirement says everyone you can stipulate to, stipulate to. So we did that in good faith. These ones we can stipulate to. But they were not – there are disputed facts here, and we identified some of those. We filed a declaration from our expert and from our client. There's a lot more to be developed on this record. It's very early in the case. I get that. But your position is that, putting aside for a moment what you would like to do, what your preference would be, you're saying that the district judge erred in – I know you disagree about the final result – but in making a decision based upon the stipulated facts. I do. I think that the judge applied the wrong standard of law in his – you know, when he said that they're exempt or they don't have to provide physical accessibility, when he talked about that on page 125 of the exerted record. It doesn't really matter because we're reviewing de novo. That's right. Thank you. Good morning. May it please the Court. My name is Michael Maurer. I'm appearing on behalf of the Lindsay Unified School District, the appellee and defendant in this matter. And we agree with my friend here's position that there are two issues for the Court to consider on this appeal, the first issue being whether the district court judge weighed the facts, even though all the facts were undisputed. And it's our position that there really are no facts that were being weighed in this instance. Mr. Delbert stipulated to all of the facts that were used to consider on summary judgment. What counsel is really taking an issue with is not the court's weighing the facts, but rather the court's conclusion on those facts. And so what's really at issue here is the program access standard. Now, to understand the program access standard, I think it's important to look at what Congress considered when Congress adopted the program access standard. This wasn't a new standard at the time the ADA was adopted. This came from the Rehabilitation Act. It had already been in practice prior to that. In adopting the ADA, Congress specifically directed the Department of Justice to develop regulations to carry out the program access standard. In performing that charge, the Department of Justice specifically says that the purpose of the program access standard, the reason we're being asked to do these regulations, is so that public agencies do not have to retrofit their facilities. The Department of Justice considered that retrofitting public agencies' facilities could be cost prohibitive. And so in adopting regulations for this standard, the Department of Justice gave public agencies the flexibility to choose among different methods of providing access. Where would you cite in the record for what you just indicated, that when the Department of Justice made this determination, you say that they said it was to save public agencies from prohibited costs? Where would you cite for that effect? And that comes from the preamble to the regulation. So when the Department of Justice – Where is that? Excuse me. It is – it's Appendix B to Part 35. And I'm sorry. I don't have the exact portion of the record. Okay. Okay. So what the Department of Justice did is it gave agencies the flexibility to choose how best to provide access. And I think what's implicit in that is that Congress and the Department of Justice considered that the agency itself is in the best position to determine how to provide access. And this is different from the Title III standard, which under Title III for privately owned public accommodations, a private company must make structural modifications if the modifications are readily achievable. So in those instances, the court's going to go and look into other outlying facts to determine if it's readily achievable. But for public agencies, it's a very narrow inquiry from the court. The inquiry is purely, does the public agency provide program access? And so in this case, based on the stipulated facts, Mr. Dalbert stipulated that persons in wheelchairs have access to the stadium for the football games. They have access to areas in the stadium where they can watch the games. From those areas in the stadium, there is a clear, unobstructed view of the games. Other friends and family may join persons in wheelchairs at this area, and also other spectators do congregate in this area. And this was brought up in my friend's opening, and it's undisputed material fact 11 indicates it's undisputed that Mr. Moreno stated that the area that he and his son sit in at the games, other spectators also congregate in those areas. And so based on these undisputed ---- The question of degree, I think what he's saying is there, if camaraderie is a part of the program, that it's limited camaraderie that's provided. That's what I understand his argument to be. What is your response to that? But based on the fact what they stipulated to, there is this opportunity for camaraderie that's being provided. Some other people might from time to time wander through the area? And I don't think the stipulation states that other people may wander through areas. It says that other spectators tend to congregate in this area. So what my friend had indicated is that there's one area where people sit, and that's in the bleachers. But that's not consistent with the fact to what he stipulated to. In this particular case, if program access requires your school district to modify the facilities, then in effect has to comply with the so-called ADOG section 35.150. Basically, that exemption just disappears. It doesn't mean anything, does it? Correct. Once you alter a facility, you must comply with the ADOG, the American with Disabilities Accessibility Guidelines. So once you alter, and the rule at 35.150 and 35.151 says the altered portions of a facility must comply with the ADOG. So when you alter something, you have to bring it up to code. So they did build a new field and stadium, correct? Correct. Well, it depends how you're defining stadium. We've used stadium pretty collectively in this. The field surface was redone. It went from a grass field to a turf field. But the parties stipulated that the bleachers were never altered, and alteration is not at issue in the summary judgment motion or in this appeal. It's assumed that these are to be governed pre-1992. Exactly, on the program access existing facility standard. And so it's undisputed amongst the parties that there is at least access to the football program being offered by the school. The only issue brought up by the appellant is whether, even though the school provides this program access, it must also provide access into the bleachers. And there are three reasons why the school does not have to do that. The first is under section 35.150. The Department of Justice specifically says a public agency only has to make structural modifications if there is no other feasible method of achieving access. And in this case, since the undisputed facts show there is another method, which is field-level seating locations, the school has met its requirement. The second reason is the appellant argues that the bleacher seating itself is a service program or activity of the school district. And on that issue, I'd encourage the Court to defer to the Department of Justice's amicus brief in this case of Frame v. City of Arlington. It's a Fifth Circuit case. And the Department of Justice explained how existing facilities work within the program access standard. Under section 35.149, facilities must be made immediately accessible. But under that section, there's an express exception that says except is listed in 35.150. Now, the way the Department of Justice has interpreted this is to say that, yes, facilities are a service program or activity, but there's an exception for service programs and activities that are existing facilities. And so existing facilities don't have to meet this standard. But a public agency still has a requirement to provide access to all of its other services, programs and activities. So whether we treat the bleachers as a service itself is, the DOJ and this Court consider needless. And so in this case, there is another service program or activity. It's the ability to watch the football games. And based on the undisputed facts, again, it shows that the school has provided program access to its football games. Now, the third reason, we've noted that the Department of Justice has not provided access to the football games. The Department of Justice has adopted standards for alterations and new constructions. One of these standards under the AEDAC, section 4.33.3, applies to fixed seating areas. And in any fixed seating assembly area, the facility must provide handicapped seating as part of the integrated seating plan. However, section 4.33.3 has an express exception for bleachers. And under that section, it says that for bleachers, they don't have to be part of the integrated, they don't have to, excuse me, they don't have to be integrated into the fixed seating plan. Rather, seating can be provided on levels containing accessible egress. In this situation, you know, based on the facts stipulated, it shows that the only level having accessible egress is the field level. And so while the AEDAC is not directly applicable to this situation because it's an existing facility, if we look at that standard for guidance, it shows that the school substantially complies. Additionally, the AEDAC requires comparable lines of sight. And this is in the same section, 4.33.3. The court, in prior court rulings in the U.S. v. AMC theater case, this court has noted that comparable lines of sight could be ambiguous. It could mean an unobstructed view or it could mean comparable viewing angles. The DOJ ultimately said it means comparable viewing angles. But this court in U.S. v. AMC said that the DOJ could have clarified that ambiguity. And it's not fair to agencies that are trying to implement this rule to have to guess what the ambiguity means. And so the less restrictive version will apply before the DOJ explained the ambiguity. And has the line of sight been an issue particularly? I thought it was more the integration here. The line of sight's not an issue, but to the extent that the bleachers are elevated and the field level's not, then it's, you know, I'm clarifying that under the rule, the rule that applied pre in U.S. v. AMC, they said pre-1998, would be that a facility, in order to comply, has to provide an unobstructed view as opposed to a similar viewing angle. So there is no requirement under the AEDAC to provide a comparable viewing angle, at least before 1998, as long as you provide an unobstructed view. And in this case, the plaintiff, Mr. Dalbert, stipulated that the school does provide an unobstructed view. Now, in adopting the ADA, Congress has stated that one of the purposes behind the ADA is to have clear, strong, consistent, and enforceable standards. And so that's what the Department of Justice was charged with carrying out here, is clear, strong, consistent, enforceable standards. And so in this case, where the facts are undisputed and stipulated that show that the school has provided access to this program, in order for these to be clear, consistent, strong, and enforceable standards, the school has a right to rely on the standards that are there. And so it's the school's position that summary judgment in this case is appropriate as a matter of law. In answer to this, your colleague indicated that the school had not indicated, by virtue of signs or anything else, that people who are handicapped can use various areas. Is that a requirement that they do so? Was it understood? How does the school respond to that? And the only inquiry is whether, when viewed in its entirety, the school provides access to the program. And so, as I noted before, the Department of Justice has given public agencies the flexibility to choose which method they're going to use. And so in a Title II existing facilities case, there's no inquiry into whether there are other methods that could possibly provide better access, whether there are different things the school could have done, whether the school is required to quote, do something. The inquiry is only whether the school provides program access. So it's not relevant to the issue on summary judgment as to whether there's actually a sign or a delineated area. The issue is simply, does the school provide access to the program? And based on the stipulated facts, it's clear that, yes, it does. The quality of the access is when you consider the program viewed in its entirety. So in order to, there aren't, it's a black-and-white objective standard in that there aren't levels where if you provide better access, then it's more likely that you've provided program access, or if you've provided less access, then it's less likely. It's purely, do you have access to this program? And so your colleague suggests that in order to comply with the remedial intent of the ADA, that in order to really provide access to the program, the school's got to modify the bleachers, because that's where everybody sits. And this gentleman wants to sit with his friends there. Your response, I gather, is that the regulations exempt the existing facilities. As long as you provide access to a program in a way that the school thinks is adequate, that's enough. And I wouldn't make it subjective on in a way that the school thinks. In the case that we cited, that's Chaffin v. Kansas State Fair. And then also in this circuit's case of Lombard v. Riverside, the courts have stated that the standard is meaningful access. And in the case of Chaffin, the plaintiff in that case, there was a whole series of impediments that prevented him from having access to the facility, even though he physically could get into the facility. And in this case, there simply isn't that sort of scenario. The undisputed facts show a number of accessible elements. The only issue is just the bleacher issue. Thank you. Why don't you put a minute back on the clock. We'll give you a little rebuttal time. Thank you. I just want to make a couple quick points. First, to answer your question earlier, I found one of those cases. It's one that we cited in our briefs. It's the Nassau County, this is the actual site. If it's in your brief, that's fine. Yeah, Brown v. County of Nassau. Completely preexisting facility, and the court found that you may have to make physical changes. My co-counsel here said that this is a black-and-white objective standard when asked about how do we weigh the quality. And it's not. Not only did the magistrate in this case say this, but all the courts have said this is a subjective analysis that's highly factual-driven and usually unsuitable for summary judgment. And so this is a very subjective test. Where do we draw the line? When is program access enough? But for me, the most important thing I'd like the court to look at before it makes its decision is the actual implementing language in 35.150. Because it is clear as can be in that section that you must, that there is no exemption for preexisting facilities to remove barriers. It only says that you can avoid it where other methods are as effective in achieving compliance with the section. There is an effective, a qualitative component, and that's as clear as can be. And then it goes on to say in choosing among the available methods, a public entity shall give priority to those methods that offer services, programs and activities in the most integrated setting appropriate. These are the factors. So there is flexibility, but it's not unfettered flexibility. They have to consider integration, they have to consider these principles, and they have to consider the effectiveness of the program. So it's a subjective test. It should be tried. And when they have this flexibility, they have to be governed by those principles. It's right here in implementing regulations. You don't get an automatic exemption. You get an exemption in some cases. You have some flexibility, but you have to come up with something. And it has to be in an integrated setting, and it has to have a qualitative component to it. Thank you. Thank you very much. Thank you both for your briefing and arguments. The case just argued, Delbert v. Lindsay, is submitted.
judges: Bolton, McKeown, Smith